No.———

First Circuit

———

### FERTILIZER WORKS v. KITTREDGE

———

(January 5, 1928.   Opinion and Decree.)
(February 15, 1928.   Rehearing Refused)
(April 9, 1928.   Writs of Certiorari and Review Denied by Supreme Court.)

———

(*Syllabus by the Editor*)

1.   Louisiana Digest—Appeal—Par. 625; Obligations—Par. 183; Bills and Notes —Par. 243.

The finding of the trial court that "ground tankage" had been delivered in execution of a contract for which the promissory note had been given within the meaning of the contract and Act 136 of 1898, being clearly correct is affirmed.

2.   Louisiana Digest—Obligations—Par. 50, 67.

An agreement between the parties as to the time objections might be urged to

the fertilizer, cannot set at naught the positive enactment of the law, Act 136 of 1898.

Appeal from the District Court, Parish of Assumption. Hon. Sam E. LeBlanc, Judge.

Action by Armour Fertilizer Works, Inc., against W. E. Kittredge.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Walter Lemann, of Donaldsonville, attorney for plaintiff, appellee.

Ivy G. Kittredge and Geo. S. Guion, of New Orleans, attorneys for defendant, appellant.

ELLIOTT, J. Armour Fertilizer Works, Inc., instituted suit against Dr. W. E. Kittredge on a promissory note for $1227.25 executed by him in its favor.

The defense is that the note is without consideration; that it was executed in compliance with an agreement that it be given in consideration of a shipment of fertilizer called "Ground Tankage" which was to contain eight percent ammonium and fifteen percent bone phosphate. That plaintiff delivered the quantity stipulated, but not the fertilizer ordered and purchased, and which the plaintiff undertook to furnish him.

That the shipment was not "ground tankage" but a mixture of tankage and acid phosphate, ammonium, sulphate and sand, the same containing about sixty percent sand. That the shipment was in violation of the agreement; that defendant thought and believed in signing the note, that he had received ground tankage, the article ordered. That the shipment was "fraudulent fertilizer" within the sense and meaning of Act 126 of 1898; that defendant is therefore not bound to pay for same.

The note sued on is for fertilizer shipped in December, 1912, in pursuance of a written agreement. This agreement states the amount of ammonium and bone phosphate which the tankage is to contain. It provides that plaintiff is to sign and send a note in payment. The fertilizer was put down on plaintiff's plantation as a fertilizer for cane and thereafter he executed the note sued on, and sent it to plaintiff. While the fertilizer was being put down and before the note was given, Mr. Reed, defendant's overseer, testifies that he grew suspicious of the fertilizer. He held back a sack, and subsequently took out of it about a gallon of its contents and washed it. He testified that in quantity it was about half sand. He reported this to defendant but defendant did not credit his statement. Defendant says that he did not credit his overseer's report, because of his confidence in plaintiff as a manufacturer of fertilizer, and his reliance in the State officials at Baton Rouge. He believed that these officers had inspected the fertilizer, and would not have passed it, if it had not been all right.

But some months afterwards he says that he heard complaints by other planters and became uneasy. He took a portion of the contents of the sack that had been kept by Mr. Reed and washed it himself, and found that the contents were about half sand. He then took two more parcels out of the sack and sent one to Dr. Metz of New Orleans, and the other to Dr. Dodson of Baton Rouge, requesting that same be analysed. He admits in his testimony that they each sent him a certificate showing the result of their analysis of the packages sent them. This was before this

suit was filed and several years before it was tried.

The plaintiff, on the trial, offered the note sued on; the defendant then offered the testimony of himself and that of Mr. Reed, and established that "ground tankage" was a product which does not contain sand, but he did not offer in evidence the certificates which he admits that he received from Doctors Dodson and Metz showing the chemical analysis of the fertilizer in question nor show the result of their examination; nor did he explain why it was not done.

The defense presents a strong argument on the law of Act 136 of 1898 and the Constitution of 1898, Art. 306.

We hold with the defendant, that his averments, that the fertilizer delivered to him was not "ground tankage" nor what he had stipulated for, nor what plaintiff had represented it to be, but fraudulent fertilizer within the meaning of Act 136 of 1898, was sufficient to justify the admissibility of evidence to show that the shipment was, in fact, fraudulent fertilizer, within the meaning and intent of the law referred to.

The estoppel, pleaded by the plaintiff, based on the fact that the contract signed by plaintiff and defendant stipulated that objections to the fertilizer were to be made within ten days, is not good in this case, because of the effect of the law, Act 136 of 1898.

The agreement of the parties as to the time when objections might be urged to the fertilizer, can not set at naught the positive enactment of the law, which intends that evidence shall be admissible in the interest of the public welfare and good, for the purpose of showing defensively under proper averments that the fertilizer is fraudulent within the sense and meaning of the law.

But after considering the evidence in the case and the various facts and circumstances disclosed by the record we are not satisfied that the district judge erred in rendering judgment in favor of plaintiff as prayed for on the theory that the fertilizer was "ground tankage" within the sense and meaning of the contract and of the law, Act 136 of 1898.